## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

|  |  |
|---|---|
| In Re:  MOTIVE, INC.,<br>SECURITIES LITIGATION | Civil Action No. 05-CV-923-LY<br><br>ORAL ARGUMENT REQUESTED |

---

## ERNST & YOUNG LLP'S MOTION TO DISMISS
## PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT

---

Of Counsel:

Patricia A. Connell
ERNST & YOUNG LLP
5 Times Square
New York, New York 10036
(212) 773-3850
- and -
Bruce M. Cormier
ERNST & YOUNG LLP
1225 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 327-7603

Shannon H. Ratliff
Texas Bar No. 16573000
Ryan A. Botkin
Texas Bar No. 00793366
Katherine P. Chiarello
Texas Bar No. 24006994
RATLIFF LAW FIRM, P.L.L.C.
600 Congress Avenue, Suite 3100
Austin, Texas 78701
(512) 493-9600
(512) 493-9625 (Facsimile)

*Attorneys for Defendant*
*Ernst & Young LLP*

---

1

## INTRODUCTION

Defendant Motive, Inc. ("Motive") sells management software for networked products and services. Since at least 2000, Defendant Ernst & Young LLP ("E&Y") had served as Motive's independent public accountants. As relevant to this lawsuit, E&Y audited Motive's financial statements for the fiscal years ending December 31, 2001 through 2004. It opined that they presented fairly, in all material respects, Motive's financial position, results of operations and cash flows in accordance with accounting principles generally accepted in the United States based on the results of audits performed in accordance with the standards of the Public Company Accounting Oversight Board (United States). E&Y also audited the financial statements of BroadJump—a company Motive had acquired—for the fiscal years ending December 31, 2000 through 2002 and rendered a similar opinion.

In the fall of 2005, Motive announced that it would amend its financial statements for the first two quarters of 2005 to restate the accounting treatment for a transaction with one of its customers. Almost immediately, Plaintiffs filed a Class Action Complaint, accusing Motive of securities fraud. More than a year later—after Motive's disclosure of additional revenue recognition issues—Plaintiffs filed an amended, Consolidated Class Action Complaint, which among other things, first added claims against E&Y under Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.

In April 2007, E&Y moved to dismiss Plaintiffs' Consolidated Amended Class Action Complaint. While E&Y's motion was pending, the United States Supreme Court clarified the heavy pleading burden imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (15 U.S.C. §§ 78u-4 *et seq.* (Supp. III 2003)). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). In the months following that decision, Plaintiffs settled

with Motive and the individual defendants (company management and directors). This left E&Y as the sole defendant in the litigation. A significant condition of the settlement was that the defendants provide document discovery and make certain witnesses available for interviews. Relying heavily on this informal discovery, Plaintiffs filed a Second Amended Complaint totaling more than 100 pages.

Despite the new paragraphs, Plaintiffs' Complaint still fails, as a matter of law, to state a claim against E&Y. First, nothing in the new complaint rescues Plaintiffs' Section 11 claim from the time bar imposed by the one-year statute of limitations. Second, Plaintiffs' Section 10(b) claim still fails to meet the requirements of the PSLRA.

Plaintiffs' Section 11 claim is untimely because it must be brought within a year of "when a purchaser of securities knew—or in the exercise of reasonable diligence, should have known—of the alleged wrongdoing." *Topalian v. Ehrman*, 954 F.2d 1125, 1133 (5th Cir. 1992). Here, Plaintiffs plead that "the truth" regarding the alleged fraud was revealed to them and to the market beginning as early as July 2005, but certainly no later than October 4, 2005. SAC ¶¶ 9-11, 288, 291, 293-94. Because Plaintiffs did not join E&Y as a defendant until more than a year later, on October 27, 2006, the time bar is clear on the face of the Complaint. Even if this obvious bar were ignored, dismissal would still be required because Plaintiffs have not pleaded their compliance with the limitations provisions of Section 13 as the case law requires.

With respect to the Section 10(b) claim, Congress adopted heightened and "exacting" pleading requirements in the PSLRA as a "check against abusive litigation by private parties." *Tellabs*, 127 S. Ct. at 2504. To survive a motion to dismiss, a plaintiff must plead specific facts that explain why the defendant's statements were fraudulent as well as facts that create a "strong inference" that the defendant acted intentionally or with severe recklessness. *Id.* In assessing the

strength of Plaintiffs' allegations of scienter, the Court "must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 127 S. Ct. at 2510.  The Supreme Court has held that the inference of scienter is strong only if a reasonable person would find it to be "powerful or cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*; *see also Central Laborers' Pension Fund v. Integrated Electrical Servs., Inc.*, 497 F.3d 546, 551 (5th Cir. 2007) (same).

Plaintiffs fall far short of meeting this standard because they fail to particularize facts which, if true, would establish that E&Y's audit opinions were fraudulent when made and fail to plead facts that raise any inference—let alone a "powerful or cogent" inference—that E&Y acted with "severe recklessness."  With hindsight, Plaintiffs allege only that because Motive has decided to restate its financial results, it necessarily follows that Motive's financial statements contained fraudulent misstatements and that E&Y's audits of those financial statements did not comply with Generally Accepted Auditing Standards ("GAAS").  It is solely on that basis that Plaintiffs contend that E&Y's opinions were fraudulent when made.  This inference is neither strong nor cogent (as required by *Tellabs*), especially in light of the equally plausible inference from Plaintiffs' allegations that any error in E&Y's audit opinions were the result of honest error rather than fraud.  Because Plaintiffs' Complaint does not meet the PSLRA's heightened pleading standard (as described by the Supreme Court in *Tellabs*), it must be dismissed.

## STATEMENT OF RELEVANT FACTS

Giving Plaintiffs the benefit of well-pleaded factual allegations, but disregarding "conclusory allegations or legal conclusions masquerading as factual conclusions," *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002), the essential allegations, as relevant to E&Y, are as follows:

On or about June 25, 2004, Motive completed its initial public offering ("IPO"), which was made pursuant to a Registration Statement and Prospectus.  Consolidated Second Amended Class Action Complaint ("SAC") ¶ 3.  In audit reports accompanying the Registration Statement, E&Y stated that:

> We conduct our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements.  An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation.  We believe that our audits provide a reasonable basis for our opinion.
>
> In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Motive, Inc. at December 31, 2002 and 2003 [BroadJump Inc. at December 31, 2001 and 2002], and the results of its operations and its cash flows for each of the three years in the period ended December 31, 2003 [December 31, 2002], in conformity with accounting principles generally accepted in the United States.

*Id*.  ¶¶ 4, 69.  E&Y offered a similar opinion as to Motive's (but not BroadJump's) 2004 year-end financial statements which was included in Motive's Form 10-K for the fiscal year ended December 31, 2004.  *Id.* ¶ 70.  For the four quarters following the IPO, Motive "reported revenues that met or exceeded its public projections" and its stock traded above the IPO price of $10 per share until July 2005.  *Id*. ¶¶ 7, 8.

Plaintiffs are purchasers of Motive's publicly traded common stock who claim to have bought at artificially inflated prices during the Class Period—June 25, 2004 through October 26, 2005.  *Id.* ¶¶ 1, 314.  Plaintiffs assert that Motive and several of its senior officers carried out a fraudulent scheme to "improperly recognize revenue to falsely bolster [Motive's] financial condition" and to "mask both a massive decline in sales and a radical change in Motive's business plan."  *Id.* ¶ 106; *see also* ¶¶ 64-76, 106-143.  Plaintiffs allege that Motive's financial

statements violated GAAP—and thus were "materially false and misleading"—by (a) erroneously accounting for revenue from "reseller transactions," (b) failing to establish and maintain vender specific objective evidence ("VSOE") of fair value generally, (c) failing to determine properly VSOE of fair value for maintenance on the majority of its software agreements, and (d) improperly accounting for the acquisition of BroadJump in January 2003. *Id.* ¶ 161; *see also* ¶¶ 170-287.

According to Plaintiffs, Motive's "façade of success, growth and strong future business prospects," *id*. ¶ 288—allegedly the product of "various accounting manipulations," *id*.—began to crumble when Motive "pre-announced disappointing second quarter results" and "that it was revising downward its previously projected revenues for fiscal year 2005" on July 11, 2005, which caused Motive's stock to lose 26% of its value on heavy trading volume. *Id.* ¶¶ 293, 10. According to Plaintiffs, these were the "first signs that Motive was concerned with its ability to properly recognize revenue from its license agreements." *Id*. ¶ 10. Plaintiffs allege that Motive's announcement on July 27, 2005 that it was further reducing its revenue projections for 2005 was the "first" announcement that "beg[a]n to inform the market" that Motive "had misstated its reported results of operations year-after-year since 2000." *Id*. ¶ 10.[1] A few months later, on October 4, 2005, Motive "disclos[ed] that revenues for third quarter 2005 would fall substantially short of the estimate Motive made" only a couple of months earlier. *Id*. ¶ 11. That day, Motive's stock price fell approximately 36%. *Id*. On October 27, 2005, Motive announced that it would be restating its financial statements for the first two quarters of 2005. *Id*. ¶ 13.

---

[1] In Plaintiffs' Consolidated Amended Class Action Complaint ("FAC") [Docket # 61], Plaintiffs alleged that Motive's July 27, 2005 announcement was "[t]he first signs [sic] that Motive had lied to the market." FAC ¶ 8. Plaintiffs' deliberate deletion of this allegation in the Second Amended Complaint is an apparent attempt to overcome the limitations bar to Plaintiffs' Section 11 claim against E&Y. Even without this allegation, however, the claim is time-barred. *See* Section I, *infra*.

That day, Motive's stock price fell more than 11%.  *Id*. ¶ 14.  The following year, Motive announced that it would "likely restate its reported result of operations" for fiscal years 2001-2004.  *Id*. ¶ 13.  According to Plaintiffs, Motive announced on July 30, 2007 that it had dismissed E&Y because Motive and E&Y "could not agree on the terms of the restatements." *Id.* ¶¶ 17, 18.  On September 5, 2007, Motive reported unaudited restated financial results for fiscal years 2003 and 2004, as well as for the first two quarters of 2005.  *Id*. ¶ 18.

Shortly after Motive's October 27, 2005 announcement that it would likely be restating certain of its financial statements, the Audit Committee of Motive's Board of Directors engaged the law firm of Graves, Dougherty, Hearon & Moody, P.C. and Pricewaterhouse Coopers to perform an independent investigation into Motive's historical financial reporting.  *Id*. ¶¶ 49-50.[2] According to Plaintiffs, the investigation determined that (1) "Motive did not institute or follow adequate procedures to document and monitor evidence supporting its establishment and maintenance of VSOE," *id.* ¶ 55; (2) the valuation of BroadJump's deferred revenue—which had been performed by Burt Grad Associates, Inc. ("BGAI"), a third-party valuation expert—was "improper," *id*. ¶¶ 57-58; (3) Motive prematurely recognized revenue for certain contracts involving Motive's sale of BroadJump's products before Motive and BroadJump executed a reseller agreement, *id*. ¶ 59; and (4) Motive prematurely recognized revenue for certain transactions in which Bizmatica acted as a reseller of Motive's products.  *Id*. ¶ 60.

In closing, the investigation report made several observations about Motive's—but not E&Y's—conduct:

_____

[2] For the reasons set forth more fully below, *see* Section II.A, *infra*, E&Y objects to the Court's consideration of any of the allegations in this and the following paragraph because it is the result of informal discovery conducted in contravention of 15 U.S.C. § 78u-4(b)(3)(B).

- Motive's management had "failed to consistently maintain (i) an appropriate tone concerning the relationship between business objectives and proper financial reporting and (ii) an appropriate skepticism regarding accounting judgments;

- Motive's management "placed excessive pressure on achieving revenue targets";

- the representation letter executed by Harmon and Baker, Motive's former CEO and CFO, respectively, in August 2005 "had the effect of misleading E&Y."

*Id.* ¶ 62.

E&Y was not added to this case until October 27, 2006. *See* Docket #54. Plaintiffs allege in a conclusory fashion that E&Y "knew, or recklessly disregarded, that Motive's financial statements did not comply with GAAP." *Id.* ¶ 186. Plaintiffs conclude that "[b]ased upon the severity and nature of Motive's misstated financial statements, E&Y must have known, or at a minimum, was deliberately reckless in not knowing about Motive's fraudulent scheme." *Id.* ¶ 194.

In an apparent attempt to cure the legal deficiencies in their Amended Complaint, Plaintiffs have now included an additional 100 paragraphs directed at showing E&Y's scienter and "participation in" the alleged fraud. SAC ¶¶ 195-297. For the reasons set forth fully in Section II.A, *infra*, none of these allegations should be considered in adjudicating the legal sufficiency of Plaintiffs' complaint because they are based on informal discovery conducted in violation of 15 U.S.C. § 78u-4(b)(3)(B).

Even if the Court were to consider these new allegations, they are not legally sufficient to raise a "powerful or cogent" inference that E&Y falsely certified Motive's financial statements with the requisite scienter, particularly when balanced against other "plausible opposing" inferences. *Tellabs*, 127 S. Ct. at 2502. First, Plaintiffs' newly minted allegations rely heavily on information from Defendant Baker (Motive's former CFO), who the Audit Committee determined had violated Motive's Code of Ethics by misleading E&Y with a false representation

letter.[3]  *See, e.g.*, SAC ¶¶ 195, 223, 241-43, 255, 284; *see also id*. ¶ 62; Exhibit 1C at 103.[4]

According to the Audit Committee, Baker signed the representation letter either "with

knowledge of its inaccuracy" or "without an appropriate degree of skepticism concerning its

accuracy." *Id*. at 88.  The Audit Committee also determined that Baker and other members of

management placed "excessive . . . pressure" on Motive's employees to achieve revenue targets

and created an "improper tone at the Company in that too great an emphasis was placed on

meeting revenue goals and too little emphasis was placed on proper accounting and financial

reporting."  Exhibit 1C at 102; SAC ¶ 62.  As a result, Motive's Board of Directors "asked for

Baker's immediate resignation."  Exhibit 1A at 4.  The Court should heavily "discount" any

inferences drawn from Baker as he has been found by the Audit Committee to be untrustworthy

and certainly has an incentive to shift the blame to E&Y.  *Cf. Higginbotham v. Baxter Int'l Inc.*,

495 F.3d 753, 757 (7th Cir. 2007) (discounting allegations based on confidential sources who

may "have axes to grind" or might be "lying").

Second, as demonstrated below, according to Plaintiffs, E&Y raised several accounting

issues with Motive on its own initiative, thus negating any inference that E&Y was complicit in

Motive's alleged fraud.  Viewing the factual allegations in the light most favorable to Plaintiffs,

---

[3] The Audit Committee determined that Baker and Harmon had violated the provision of
Motive's Code of Ethics that prohibited "directly or indirectly tak[ing] any action to coerce,
manipulate, mislead or fraudulently influence Motive's or its subsidiaries' independent auditors
. . . for the purpose or with the effect of rendering the financial statements of Motive and its
subsidiaries misleading, or direct[ing] anyone else to do so."  SAC ¶ 62; Exhibit 1C at 103.

[4] Exhibit 1 is a copy of the final report issued by Motive's Audit Committee on July 30, 2007.
*See* SAC ¶ 54.  For electronic filing purposes, it has been broken up into sections A-C.  If the
Court determines that these allegations can be considered, *but see* Section II.A, *infra*, it may also
consider the complete contents of the report because Plaintiffs' Second Amended Complaint
relies heavily on certain portions of it.  *See, e.g.*, SAC ¶¶ 49-63, 198-239; *see also Collins v.
Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a
defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred
to in the plaintiff's complaint and are central to her claim.").

the most Plaintiffs have alleged is that E&Y, after identifying several accounting issues, did not see them through to a resolution that was consistent with GAAP. Some might argue that this reflects a lack of diligence on the part of E&Y, but in no way does this alleged failure rise to the level of fraud. In any event, any nefarious inference that can be drawn from Plaintiffs' allegations is certainly not powerful and at least as compelling as the non-culpable inferences—which is what *Tellabs* requires to survive a motion to dismiss. *Tellabs*, 127 S. Ct. at 2510.

For example, Plaintiffs allege that "E&Y had total access" to Motive's employees and financial records while E&Y was acting as Motive's independent auditor and that E&Y was "intimately involved" in Motive's accounting determinations. SAC ¶¶ 195, 196, 241-43. As to the issue of VSOE of fair value for the maintenance element covered by Motive's sales contracts, Plaintiffs allege that E&Y "express[ed] concerns over the erosion of Motive's quantitative VSOE datapoints" in the fall of 2003. *Id.* ¶¶ 213-14. Motive represented to E&Y that it would "attempt to fix the problem" and E&Y "believed this oral representation." *Id.* ¶ 214. "At the request of E&Y," in February 2004 Motive began "preparing a quarterly VSOE Support Documentation memorandum at the end of each quarter to document the allocation of revenue" for the different elements "and to document the impact of each recently completed quarter on Motive's overall VSOE determinations." *Id.* ¶ 223. In 2006, however, the Audit Committee conducted a forensic investigation that went far beyond the scope of the GAAS audit originally conducted by E&Y. With the benefit of hindsight after a change in management, the Audit Committee concluded that Motive's evidence of VSOE in 2001-2005 was not sufficient. *Id.* ¶ 230.

Plaintiffs further allege that E&Y was involved in Motive's decision about how to account for deferred revenue as a part of Motive's acquisition of BroadJump. *Id.* ¶ 251. When E&Y expressed some concern about Motive's initial valuation of deferred revenue in connection

with the BroadJump acquisition, Motive retained BGAI, "a third-party valuation expert to perform a valuation of BroadJump for purchase accounting purposes, including BroadJump's deferred revenue." *Id*. ¶¶ 255, 252-54. Burt Grad communicated with E&Y's internal valuation experts about the valuation of BroadJump. *Id.* ¶¶ 258-262. Several years later, however, Deloitte & Touche LLP (who had been retained by the Audit Committee as part of the internal investigation) "prepared a draft valuation report with a significantly reduced deferred revenue value" as a result of changing several assumptions that had been made or relied upon by BGAI. *Id.* ¶ 269.

Finally, Plaintiffs' challenge Motive's accounting for four contracts under which Motive sold BroadJump's products before the merger between Motive and BroadJump was complete. *Id*. ¶¶ 281-87. Motive recognized revenue for those contracts in the fourth quarter of 2002 and E&Y rendered an unqualified audit opinion on the financial statements for fiscal year 2002. *Id*. ¶ 283. In 2006, however, the Audit Committee was unable to find any evidence "that the reseller agreement was executed by Motive prior to the end of December 2002." *Id*. ¶ 282.

The Audit Committee's final report reflects evidence that, in certain respects, Motive attempted to prevent E&Y from performing effective audits. For example, Motive's CEO and CFO made at least one false representation to E&Y that had the effect of misleading E&Y. *See* Exhibit 1C at 88. The Audit Committee also uncovered evidence that Motive's senior management attempted to preclude E&Y from participating in certain accounting determinations. *Id*. at 40 (Motive's Controller "knew that Baker '[did] not what [sic] to get E&Y involved'" in accounting for deferred revenue).

## ARGUMENT

I.   **PLAINTIFFS' SECTION 11 CLAIMS AGAINST E&Y ARE TIME-BARRED BECAUSE PLAINTIFFS WERE ON NOTICE OF THE ALLEGED FRAUD MORE THAN A YEAR BEFORE SUING E&Y.**

Claims under Section 11 are governed by the one-year limitations provision contained in Section 13 of the Securities Act of 1933. *See Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 967-68 (5th Cir. 1981). Section 13 provides, in relevant part:

> No action shall be maintained to enforce any liability created under § 77k or § 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . .

15 U.S.C. § 77m. Thus, Section 13's one-year limitations period begins to run "when a purchaser of securities knew—or in the exercise of reasonable diligence, should have known—of the alleged wrongdoing." *Topalian*, 954 F.2d at 1125 (citations omitted). Under either standard—actual notice or inquiry notice—Plaintiffs' Section 11 claim against E&Y is time-barred.

### A.   The Court May Grant a Rule 12(b)(6) Motion on Statute of Limitations Grounds Because It Is Apparent from the Face of the Complaint that Plaintiffs Had Actual Notice of the Alleged Fraud.

Where, as here, "it is evident from the plaintiff's pleadings that the action is [time-]barred and the pleadings fail to raise some basis for tolling or the like," dismissal under Rule 12(b)(6) is compelled. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citing cases).[5]

As to E&Y, this action was commenced with the filing of the Consolidated Class Action Complaint on October 27, 2006, which added E&Y as a defendant. Plaintiffs plead that they

---

[5]   *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 380 (5th Cir. 2002) (affirming grant of Rule 12(b)(6) motion when it was apparent from complaint that Title VII lawsuit was not filed within 90 days of receipt of right-to-sue letter); *Kansa Reinsurance Co. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1366, 1371 (5th Cir. 1994) (affirming dismissal of fraud claims on Rule 12(b)(6) motion)

were on *actual* notice of the alleged material misrepresentations well more than a year before

they sued E&Y.  Specifically, Plaintiffs allege that "the truth" about Motive's and E&Y's fraud

began to emerge on July 11, 2005 when Motive issued a disappointing earnings announcement

which caused its stock to lose a quarter of its value.  SAC ¶¶ 292-93.  According to the Plaintiffs,

this was when they were "first" aware that Motive's "prior financial results were false and

misleading," *id*. ¶¶ 291, 293.   According to Plaintiffs, Motive's July 11, 2005 corrective

disclosure (as well as the ones occurring on October 4 and October 27) removed the "prior

inflation . . . from Motive's stock price, thereby damaging" Plaintiffs.  *Id*. ¶¶ 291, 293-95.

Accepting Plaintiffs' well-pleaded factual allegations as true, *Central Laborers' Pension Fund*,

497 F.3d at 550, one is compelled to recognize that Plaintiffs expressly concede that (1) they and

the market were aware of the alleged fraud as of July 11, 2005; (2) they were again made aware

of the alleged fraud on October 4 and 27, 2005; and (3) this awareness caused the price of

Motive's stock to fall.

      This actual knowledge of the alleged fraud triggered the running of the one-year statute

of limitations applicable to Plaintiffs' Section 11 claim.  Plaintiffs did not assert claims against

E&Y until October 27, 2006, *more than three months* after the statute of limitations expired.

Thus, Plaintiffs' Section 11 claim against E&Y is time-barred and should be dismissed with

prejudice.  *See, e.g.*, *Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F. Supp. 658, 658

(S.D.N.Y. 1987) (granting summary judgment when plaintiff conceded that it knew more than a

year before it brought suit that the financial statements included in a prospectus were erroneous,

even if plaintiff did not know the extent of the misstatements).

**B.     At a Minimum, Plaintiffs' Complaint Establishes That They Were On Inquiry Notice More Than a Year Before Suing E&Y.**

Even if Plaintiffs were not on actual notice of the alleged fraud until Motive's announcement of a restatement on October 27, 2005, Plaintiffs were certainly put on *inquiry* notice more than a year before suing E&Y.  "A potential plaintiff is not permitted a leisurely discovery of the full details of the alleged scheme."  *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 796 (N.D. Tex. 2000) (citing *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988)). Instead, "an investor who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed."  *Id.*

Accordingly, the statute of limitations for a Section 11 claim "commences to run once *suspicion, doubt, or skepticism* has arisen in a plaintiff's mind."  *Thomas v. Gulfstream Exploration, Ltd.*, Civ. A. No. H-84-717, 1987 WL 14373, *2 (S.D. Tex. June 18, 1987) (emphasis added) (citing *Hadra v. Herman Blum Consulting Eng'rs*, 632 F.2d 1242, 1247 (5th Cir. 1980)).  In other words, the statute of limitations is "triggered by evidence of the *possibility* of fraud."  *Friedlob v. Trustees of the Alpine Mut. Fund Trust*, 905 F. Supp. 843, 853 (D. Colo. 1995) (emphasis added) (dismissing plaintiff's securities fraud claims because they were on inquiry notice more than one year prior to filing suit).

In response to E&Y's original motion to dismiss, Plaintiffs have modified their complaint in an attempt to avoid the obvious time bar.  For the first time, Plaintiffs make the conclusory allegation that as of July 11 and October 5, "the market was not fully aware of the extent of [Motive's] revenue recognition related issues, including, specifically, that Motive's historical financial results were fraudulent."  SAC ¶¶ 293, 294.  Plaintiffs' modifications are to no avail.  It is irrelevant when the market became "fully aware of the extent of" Motive's alleged fraud

13

because the statute of limitations begins to run "when the investors should have discovered the general fraudulent scheme, not when they should have discovered particular details," *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir. 1995). Thus, it is irrelevant that Plaintiffs contend they were not "fully aware" that Motive's historical financial results "were fraudulent" until October 27, 2005. SAC ¶¶ 293, 294, 296. Nor should the Court accept conclusory allegations or legal conclusions, *see Central Laborers' Pension Fund*, 497 F.3d at 550—such as Plaintiffs' new allegations that (1) Motive's October 27, 2005 announcement was the "first . . . credible evidence of the probability" that the Defendants had made false and misleading statements in the June 2004 Registration Statement and thus (2) they were not on inquiry notice of the alleged securities law violations until that date. SAC ¶¶ 77-79.

By their own admission, Plaintiffs had doubt about the veracity of Motive's financial reporting as early as July 11, 2005 and such doubt triggered both a duty to inquire and the commencement of the running of the one-year statute of limitations. Where, as here, "the pleadings disclose facts sufficient to have placed the plaintiff on inquiry notice of the alleged fraud prior to the one-year cutoff," Plaintiffs' securities fraud claims must be dismissed. *See, e.g.*, *Rahr*, 142 F. Supp. 2d at 796-97 (noting that several courts have held that dismissal is mandated under such circumstances).[6]

## C.    Plaintiffs Have Failed To Plead Compliance With Section 13.

Even if the Section 11 claim were not time-barred on its face, it should still be dismissed because Plaintiffs have failed to comply with Section 13's requirement that they "plead and

---

[6] *See also Fuqua v. Ernst & Young LLP*, 33 Fed. Appx. 569, 570, No. 01-7974, 2002 WL 535085, at *4 (2d Cir. Apr. 10, 2002) (affirming dismissal of claims against auditors where plaintiffs were placed on inquiry notice by financial results substantially below historical performance); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 863-64 (N.D. Tex. 2005) (Section 11 claims time-barred when plaintiffs were placed on inquiry notice by press release issued thirteen months before case was filed).

prove *facts* that show that his action was filed within the time periods specified by statute." *Caviness v. DeRand Resources Corp.*, 983 F.2d 1295, 1302 (4th Cir. 1993) (emphasis added; citations omitted); *see also Davidson v. Wilson*, 973 F.2d 1391, 1402 n.8 (8th Cir. 1992); *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985); *Steiner v. Southmark Corp.*, 734 F. Supp 269, 278-79 (N.D. Tex. 1990).   In this sense, Section 13 is substantive and imposes an affirmative pleading burden on plaintiff to demonstrate that his claim is timely.  *See Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1434 (10th Cir. 1991), *judgment rev'd on other grounds by Dennler v. Trippet*, 503 U.S. 978 (1992); *Krome v. Merrill Lynch & Co.*, 637 F. Supp. 910, 914 (S.D.N.Y. 1986), *vacated in part on other grounds*, 110 F.R.D. 693.

Now, for the first time, Plaintiffs conclude that (1) "the market was not aware until October 27, 2005" that E&Y's certification of Motive's financial results "were materially false and misleading"; (2) Motive's October 27, 2005 announcement was the "first . . . credible evidence of the probability" that E&Y had made false and misleading statements in Motive's June 2004 Registration Statement; and (3) Plaintiffs were not "on inquiry notice of their claims" against E&Y until that date.  SAC ¶¶ 77-79.  These averments are fatally flawed because (1) they are mere legal conclusions and do not provide any factual support for Plaintiff's Section 11 claim and (2) Plaintiffs do not plead, as Section 13 requires, any facts indicating that they could not reasonably have discovered the alleged fraud more than a year before they sued E&Y.  In order to meet that burden, Plaintiffs were required to plead facts (not conclusions) showing: (1) the time and circumstances of their discovery of the alleged fraud; (2) the reasons why they did not discover it earlier; and (3) the diligent efforts which Plaintiffs undertook in making such discovery.  *See, e.g., In re Adelphia Communications Corp. Sec. Litig.*, No. 03 MDL 1529 (LMM), 2005 WL 1278544, at *18 (S.D.N.Y. May 31, 2005) (citing cases); *Krome*, 637 F. Supp.

at 914.  Because Plaintiffs have failed to plead such facts here, the Section 11 claim should be dismissed.

II.     **PLAINTIFFS' SECTION 10(B) CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD FRAUD WITH PARTICULARITY OR ALLEGE SPECIFIC FACTS SUPPORTING THE REQUISITE STRONG INFERENCE THAT E&Y ACTED WITH INTENT TO DECEIVE.**

To state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities[:] (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately injured him." *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  Because Plaintiffs have failed to meet the rigorous pleading standards imposed by the PSLRA, the Section 10(b) claims against E&Y must be dismissed.

A.      **The Court Should Not Consider Allegations Derived from the Informal Discovery Plaintiffs Conducted While Motions to Dismiss Were Pending.**

As discussed in detail in E&Y's original Motion to Dismiss [Docket #64], Plaintiffs' prior complaint contained virtually no allegations against E&Y.  Now, long after filing their lawsuit, Plaintiffs have attempted to create a claim against E&Y by conducting interviews of current and former Motive employees and obtaining documentary evidence from Motive.  Far from a voluntary exchange of information, this informal discovery occurred only after Plaintiffs included it as a mandatory condition of the settlement reached between Plaintiffs and Motive and the individual defendants.  *See* Exhibit 2 ("Our clients do not wish to be interviewed. Unfortunately, this was a condition imposed on them as part of the settlement.")

Permitting Plaintiffs to rely on information obtained after it sued E&Y is contrary to the clear intent of Congress.  The PSLRA was intended to "prevent a plaintiff from utilizing discovery to formulate a claim."  *Sedona Corporation v. Ladenburg Thalmann*, No. 03 Civ. 3120, 2005 WL 2647945, *3 (S.D. N.Y Oct. 14, 2005) (citing *S.G. Cowen Sec. Corp. v. United*

*States Dist. Court for the N. Dist. of California*, 189 F.3d 909, 912 (9th Cir. 1999)). Congress "clearly intended that complaints in these securities actions should stand or fall *based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.*" *Medhekar v. United States Dist. Court for the N. Dist. of California*, 99 F.3d 325, 328 (9th Cir. 1996) (emphasis added). Congress's intent is undermined when, as here, class action plaintiffs coerce, through settlement terms, some defendants to provide information plaintiffs lacked when they filed suit in order to support claims against the remaining defendants. The mandatory discovery stay imposed by 15 U.S.C. § 78u-4(b)(3)(B) is intended to deter "so-called 'strike suits' and 'fishing expeditions' by mandating that, aside from certain exceptional circumstances, 'discovery be permitted only after the court has sustained the sufficiency of the complaint.'" *In re Lernout & Hauspie Securities Litigation*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (citing Senate Report No. 104-98, at 14 (1995)).

In accord with clear congressional intent, this Court should adjudicate the sufficiency of Plaintiffs' claims against E&Y based on the information Plaintiffs had when they sued E&Y— specifically as that information was described in Plaintiffs' Consolidated Amended Class Action Complaint [Docket # 61]. However, as demonstrated below, even if the Court were to consider the new allegations based on Plaintiffs' recent informal discovery, it is clear that Plaintiffs have failed to state a claim against E&Y and their complaint should be dismissed with prejudice.

### B. The PSLRA Establishes Formidable Requirements for Pleading Fraud and Scienter in a Securities Case.

As to their claims under Section 10(b) and Rule 10b-5, Plaintiffs are required to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Central Laborers' Pension Fund*, 497 F.3d at 550. Additionally, the PSLRA—passed by Congress to curb

"targeting of deep-pocket defendants," like E&Y and "manipulation by class action lawyers,"

*Tellabs*, 127 S. Ct. at 2508—requires Plaintiffs to "*state with particularity facts giving rise to a*

*strong inference that the defendant acted with the required state of mind*"— specifically an

"intent to deceive, manipulate or defraud."  15 U.S.C. § 78u-4(b)(2) (emphasis added).

Plaintiffs may establish the requisite scienter by demonstrating either intent or "severe

recklessness," which has been defined as:

> [T]hose highly unreasonable omissions or misrepresentations that involve not
> merely simple or even inexcusable negligence, but an extreme departure from the
> standards of ordinary care, and that present a danger of misleading buyers or
> sellers which is either known to the defendant or is so obvious that the defendant
> must have been aware of it.

*Central Laborers' Pension Fund*, 497 F.3d at 551; *see also Broad v. Rockwell Int'l Corp.*, 642

F.2d 929, 961-62 (5th Cir. 1981) (*en banc*) (severe recklessness is "the kind of recklessness that

is equivalent to willful fraud").  An inference of scienter that is "merely plausible or reasonable"

is not the strong inference that is required by the PSLRA.  *Tellabs*, 127 S. Ct. at 2510.  A

complaint will survive a motion to dismiss only if a reasonable person would deem the inference

of scienter "powerful or cogent."  *Id*.  Additionally, the inference of scienter must be "at least as

compelling as any opposing inference one could draw from the facts alleged."  *Id*.

In this case, where E&Y as the independent accountant is one step removed from the

management-authored financial statements, the pleading burden is particularly demanding:

> To satisfy securities fraud scienter, "such recklessness must be conduct that is
> 'highly unreasonable,' representing 'an extreme departure from the standards of
> ordinary care.'  *It must, in fact, approximate an actual intent to aid in the fraud*
> *being perpetrated by the audited company*."

*Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (citation omitted) (emphasis added); *see also*

*Fin. Acquisition Partners*, 440 F.3d at 290 (requiring the pleading of particularized facts

demonstrating that auditor was "severely reckless").  When, as here, a plaintiff fails to meet this

18

rigorous pleading standard, Congress has mandated that "the court *shall*, on the motion of any defendant, dismiss the complaint."   15 U.S.C. § 78u-4(b)(3)(A) (emphasis added); *Nathenson*, 267 F.3d at 407.

### C.   Plaintiffs' Conclusory Allegations Fail To Create a Strong Inference of Severe Recklessness by E&Y.

Plaintiffs have failed to plead any *facts* (rather than mere conclusions) from which a strong inference can be drawn that E&Y knew or must have known that Motive's financial statements were false and misleading at the time E&Y issued the challenged audit opinions. Instead, Plaintiffs' merely contend that because alleged financial fraud at Motive was "rampant and pervasive" (SAC ¶ 193) and because the Audit Committee, in 2006 and with the benefit of a more in-depth forensic accounting process, disagreed with certain of Motive's prior accounting determinations then "E&Y must have known, or at a minimum, was deliberately reckless in not knowing, about Motive's fraudulent scheme."  *Id*. ¶ 194.   Such fact-deficient pleading does not come close to raising any inference, much less the requisite "strong inference," of scienter.

### 1.   Alleged Violations of GAAP and GAAS Combined with a Restatement Do Not Create a Strong Inference of Severe Recklessness.

This Complaint cannot be saved by Plaintiffs' allegations that E&Y violated one enumerated GAAS provision while opining on financial statements that allegedly violated GAAP.  SAC ¶¶ 160-182, 191-92.  Even before the PSLRA, such pleading was deficient:  "The mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1020 (5th Cir. 1996) (quoting *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990)).  Similarly, boilerplate averments that the accountants violated particular accounting standards are not, without more, sufficient to support inferences of fraud."  *Melder v. Morris*, 27 F.3d 1097, 1103

(5th Cir. 1994).  This is because "[t]he party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information."  *Lovelace*, 78 F.3d at 1020.  Thus, dismissal is required when plaintiffs fail to allege specific facts available to the defendant "at the time of the alleged misstatements that would contradict them."  *Abrams*, 292 F.3d at 432.

More than a year ago, in *Financial Acquisition Partners*, the Fifth Circuit reaffirmed these principles in affirming dismissal of a Section 10(b) claim against an independent auditor, Deloitte & Touche.  *See* 440 F.3d at 290-91.  Rejecting plaintiffs' conclusory allegation that "Deloitte misled the public to believe Ameresco's financial statements were in accord with [GAAP] and [GAAS]," the Fifth Circuit held that "failure to follow accounting standards, without more, does not establish scienter; this claim fails."  *Id*. at 290.  The court also rejected a more specific allegation that Deloitte had improperly failed to qualify its opinion, concluding that "Plaintiffs did not plead sufficiently particularized facts demonstrating that Deloitte was, *inter alia*, severely reckless in failing to issue the qualification."  *Id*.  The district courts in Texas have been faithful to these Fifth Circuit holdings.[7]

Indeed, it cannot be disputed that "even a properly planned and performed audit may not detect a material misstatement resulting from fraud."  American Institute of Certified Public Accountants Professional Standards (September 1, 2004) AU § 316.12.  This is because "[f]or practical reasons of time and cost, an audit rarely, if ever, examines every accounting transaction in the records of a business.  The planning and execution of an audit therefore requires a high

---

[7]  *See, e.g. Umsted v. Andersen LLP*, No. 3:02-CV-496-M, 2003 WL 222621, at *4 (N.D. Tex. Jan. 28, 2003) (no allegation that the auditor failed to act on contemporaneous knowledge "of facts indicating the financial information it was seeing was false"); *Schiller v. Physicians Res. Group, Inc*., No. 3:97-CV-3158-L, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) (no facts to support "how [auditor] knew or became aware of these [purported] 'red flags.'"), *aff'd*, 342 F.3d 563 (5th Cir. 2003).

degree of professional skill and judgment." *Bily v. Arthur Young & Co.*, 834 P.2d 745, 749 (Cal. 1992). Moreover, as the United States Supreme Court has recognized, "financial accounting is not a science. It addresses many questions as to which the answers are uncertain and is a 'process [that] involves continuous judgments and estimates' . . . . There are 19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question." *E.g.*, *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100-01 (1995) (alteration in original; citation omitted). For these reasons, mere "deviation from accounting standards or guidelines alone would not 'perforce thereof spell negligence in an audit,'" let alone scienter. *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 n.57 (S.D.N.Y. 1992) (citation omitted); *see also Lovelace*, 78 F.3d at 1021.

Just as scienter may not be inferred from claimed violations of GAAS and GAAP, so it cannot be based on any restatement of Motive's financial results to reflect GAAP more accurately. "Restatements of earnings are common" and often result from "honest error." *Goldberg v. Household Bank*, 890 F.2d 965, 967 (7th Cir. 1989) (affirming summary judgment on Section 10(b) claim). In dismissing a securities fraud claim based on purported violation of SOP 97-2 and a restatement of 1999 operating results, one district court has correctly held that "a restatement of earnings, without more, does not support a 'strong inference' of fraud, or for that matter, a weak one." *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 169 (D. Mass. 2000); *see also Abrams*, 292 F.3d at 429 (affirming dismissal notwithstanding restatement reducing profits by $31 million over three years); *In re MSC Indus. Direct Co.*, 283 F. Supp. 2d 838, 849 (E.D.N.Y. 2003) (dismissing Section 10(b) claim while rejecting plaintiffs' argument "that MSC's restatement over a four-year period and the defendants' access to actual inventory information establishes scienter"). To hold otherwise even after a large restatement—which, at

best, only indicates a company's recognition that its prior financial statements were incorrect—"would ignore the reality that scienter and falsity are distinct elements of a Section 10(b) claim." *In re Med/Waste, Inc. Sec. Litig.*, No. 99-1684-CIV-GOLD, 2000 WL 34241099, at *8 (S.D. Fla. Aug. 30, 2000) (granting motion to dismiss).  A restatement "provides no indication how or when Defendants became aware of the falsity of the original statements."  *Id.*

Here, taking all Plaintiffs' well-pleaded factual allegations as true, it is apparent that E&Y considered and addressed with Motive the accounting issues that Plaintiffs now contend rendered Motive's financial statements and E&Y's audit opinions false and misleading. Moreover, there is evidence that Motive's management took steps to prevent E&Y from performing effective audits and rendering accurate audit opinions.  The Audit Committee uncovered evidence that Motive's senior management attempted to keep E&Y out of the loop with respect to certain accounting determinations.  Exhibit 1A at 40 (Motive's Controller "knew that Baker '[did] not what [sic] to get E&Y involved'" in accounting for deferred revenue).  And the Audit Committee concluded that on at least one material occasion Motive's senior management made false representations to E&Y that had the effect of misleading E&Y.  *See* Exhibit 1C at 88; SAC ¶ 62.  Of course, if E&Y were complicit in Motive's alleged fraud, there would have been no need for Baker to lie to E&Y.   These allegations do not support an inference that E&Y issued its audit opinions with an intent to aid in any fraud perpetuated by Motive.  To the contrary, they suggest that E&Y was engaged in a good faith audit of Motive's financial statements but that, in certain respects, E&Y's efforts were frustrated by Motive's lack of candor.

According to Plaintiffs' new allegations—allegations that are based largely on information from persons who were terminated for their dishonest conduct—E&Y (1) was aware

of Motive's need to establish and maintain VSOE; (2) reviewed the relevant contracts; (3) discussed with management E&Y's concerns about Motive's ability to maintain VSOE on a go-forward basis; and (4) received assurances from management that Motive would continue to provide sufficient support of VSOE.  SAC ¶¶ 198-247.  As to accounting for BroadJump's deferred revenue, Plaintiffs allege that Motive, at E&Y's suggestion, retained and relied on a third-party valuation expert.  SAC ¶¶ 248-255.[8]  The fact that another accounting firm later disagreed with E&Y's judgments about Motive's treatment of VSOE and BroadJump's deferred revenue does not give rise to a "powerful or cogent" inference that E&Y's judgment was made with scienter at the time it rendered its audit opinions.  Notably, not even Motive's discredited former management claimed that E&Y was a participant in the alleged fraud.  An inference of scienter under these circumstances is certainly not "at least as compelling as [the] opposing inference one could draw from the facts alleged"—that E&Y's allegedly erroneous audit opinions were the result of a mere mistake in accounting judgment.  *Tellabs*, 127 S. Ct. at 2510.

As to Plaintiffs' allegation that Motive prematurely recognized revenue for four "reseller" transactions in fiscal year 2002, they do not raise a strong inference that E&Y acted with scienter.  According to Plaintiffs, it was E&Y's practice to "review every single contract," "ask[] the questions that needed to be asked," and perform "cut-off testing to make sure that everything was signed at the appropriate time."  SAC ¶ 285.  The Reseller Agreement was dated as of December 1, 2002 and was executed by BroadJump on December 27, 2002.  *See* Exhibit 1B at 52.  The fact that the Audit Committee allegedly could not find evidence "that the reseller agreement was executed by Motive prior to the end of December 2002," SAC ¶ 282, does not

---

[8]  Citing their interview with Baker, Plaintiffs allege that Motive hired BGAI because it "was known to E&Y."  SAC ¶ 255.  But the Audit Committee's Report—on which Plaintiffs so heavily rely on—determined that BGAI was selected, in part, because Baker knew its principal, Mr. Grad, from work Grad did for Baker's former company.  Exhibit 1A at 42.

give rise to a powerful and cogent inference that E&Y's audit opinion was intentionally or recklessly misleading.  Again, the inference that E&Y's allegedly erroneous audit opinion was the result of a good faith error is at least as compelling as the inference of scienter.

Even if these allegations could be deemed to give rise to an inference that E&Y's audit determinations were incorrect, that is not enough.  The law is clear that allegations of "merely simple or even inexcusable negligence" do not give rise to an inference of scienter.  *Central Laborers' Pension Fund*, 497 F.3d at 551.  And the Fifth Circuit has repeatedly recognized that "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more" does not establish scienter.  *See, e.g.*, *Lovelace*, 78 F.3d at 1021; *see also Melder*, 27 F.3d at 1103.  Plaintiffs' attempts to claim "fraud by hindsight" cannot state a claim for securities fraud.  *See, e.g.*, *Southland Securities Corp. v. Inspire Insurance Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("[F]raud cannot be proved by hindsight . . . ."); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 866 (N.D. Tex. 2005).

### 2.   E&Y's Role as Motive's Independent Auditor Does Not Raise a Strong Inference of Severe Recklessness.

Plaintiffs contend that E&Y's service as Motive's independent auditor for approximately five years and resulting familiarity with the company and its accounting gives rise to a strong inference of the requisite fraudulent intent.  SAC ¶ 193-94.  This argument cannot prevail as it would expose every accounting firm that has an established relationship with a client to claims for securities fraud based simply on the length of the relationship.  Notably absent here is any allegation specifying particular information that E&Y allegedly learned, when and by whom such information was acquired, or any other circumstances indicating that E&Y knew that Motive's financial statements were materially misleading when it issued its audit opinions.

Plaintiffs cannot get by with such general pleading.  Indeed, the Fifth Circuit has already refused to find a strong interference of scienter from the precise allegation Plaintiffs make against E&Y here—namely that in the course of auditing Motive's financial statements, E&Y "must have known, or at a minimum was deliberately reckless in not knowing" about the alleged fraudulent scheme.  *See Melder*, 27 F.3d at 1104 (rejecting the plaintiffs' "rote conclusions, such as:  'In the course of rendering services to URCARCO, Coopers and Lybrand either obtained knowledge of, or recklessly disregarded, the facts alleged herein.'" (quoting complaint)). Several other courts have ruled the same way.  *See, e.g.*, *Queen Uno Ltd. P'ship v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1360 (D. Colo. 1998) ("implausible" to imply knowledge from accountant's access to a company's internal data"); *Rothman*, 220 F.3d at 98 (no inference of knowledge because defendant was outside auditor for several years.).  In sum, there is no meat on the bones of Plaintiffs' assertion that E&Y "knew or recklessly disregarded" Motive's alleged fraud, (Compl. §§ 243, 253), and the absence of particularized allegations creating a "strong inference" of scienter is fatal under the PSLRA.  *See, e.g.*, *Schiller*, 2002 WL 318441, at *15-16 (dismissing where complaint did not identify facts that support how auditor knew or became aware of alleged fraud); *Umsted*, 2003 WL 222621, at *4 (dismissing where "[t]he red flags" suggesting "'severe recklessness' are not pleaded with particularity").

Because Plaintiffs fail to allege any specific facts known by E&Y at the time of the challenged audit opinions that would render E&Y's opinions false and misleading, the Fifth Circuit's holdings in *Abrams*, *Melder*, and *Financial Acquisitions Partners* compel this Court to dismiss the Section 10(b) and Rule 10b-5 claims against E&Y.

## CONCLUSION

For the reasons set forth here, E&Y's Motion to Dismiss should be granted.

Dated:  December 31, 2007

Respectfully submitted,


By: /s/ Shannon H. Ratliff
    Shannon H. Ratliff
    Texas Bar No. 16573000
    Ryan A. Botkin
    Texas Bar No. 00793366
    RATLIFF LAW FIRM, P.L.L.C.
    600 Congress Avenue, Suite 3100
    Austin, Texas 78701
    (512) 493-9600
    (512) 493-9625  (Facsimile)
    sratliff@ratlifflaw.com
    rbotkin@ratlifflaw.com

    Patricia A. Connell
    ERNST & YOUNG LLP
    5 Times Square
    New York, New York 10036
    (212) 773-3850

    Bruce M. Cormier
    ERNST & YOUNG LLP
    1225 Connecticut Avenue, N.W.
    Washington, D.C. 20036
    (202) 327-7603

    *Attorneys for Defendant*
    *Ernst & Young LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December, 2007 I electronically filed Ernest & Young LLP's Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint and Proposed Order with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| **Paul L. Smith**<br>**Robyn Pozza Dollar**<br>Paul L. Smith & Associates<br>9433 Bee Cave Rd.<br>Bldg. II, Suite 203<br>Austin, TX 78733<br>(512) 542-0061<br>(512) 542-0087 (fax)<br>pls@smithtrial.com<br>rdollar@smithtrial.com<br><br>Attorneys for:<br>Lisa Saint-Aubin *(Consol Plaintiff)*<br>Sara Jackson *(Consol Plaintiff)*<br>City of Bethlehem Aggregated Pension Fund<br>*(Consol Plaintiff)* | **Kip B. Shuman**<br>Shuman & Berens LLP<br>801 East 17th Avenue<br>Denver, CO 80218-1417<br>(303) 861-3003<br>(303) 830-6920 (fax)<br>kip@shumanberens.com<br><br>Attorney for Jonathan Cheek<br>*(Consol Plaintiff)* |
| **William B. Federman**<br>Federman & Sherwood<br>10205 N. Pennsylvania Ave.<br>Oklahoma City, OK 73120<br>(405) 235-1560<br>(405) 239-2112 (fax)<br>wfederman@aol.com<br><br>Attorney for:<br>Laurence Paskowitz *(Plaintiff)*<br>Lisa Saint-Aubin *(Consol Plaintiff)*<br>Sara Jackson *(Consol Plaintiff)* | **Jennifer L. Keeney**<br>**Richard A. Maniskas**<br>**Christopher L. Nelson**<br>**Kay E. Sickles**<br>Schiffrin Barroway Topaz & Kessler, LLP<br>280 King of Prussia Rd.<br>Radnor, PA 19087<br>(610) 667-7706<br>(610) 667-7056 (fax)<br>jkeeney@sbclasslaw.com<br><br>Attorneys for:<br>City of Bethlehem Aggregated Pension Fund<br>*(Consol Plaintiff)*<br>Lisa Saint-Aubin *(Consol Plaintiff)*<br>Sara Jackson *(Consol Plaintiff)*<br>John Smith *(Consol Plaintiff)* |

27

| | |
|---|---|
| **Michael Klein**<br>**Lisa Michaux Magids**<br>Smith Robertson Elliott Glen Klein & Bell, LLP<br>221 West 6th Street, Suite 1100<br>Austin, TX 78701<br>(512) 225-5808<br>(512) 225-5828 (fax)<br>mklein@smith-robertson.com<br>lmagids@smith-robertson.com<br><br>Attorneys for:<br>City of Bethlehem Aggregated Pension Fund *(Consol Plaintiff)*<br>Jack Dyke *(Consol Plaintiff)*<br>Kanto Elezaj *(Consol Plaintiff)*<br>Valentin Spitkovsky *(Consol Plaintiff)*<br>William E. Driscoll *(Consol Plaintiff)*<br>John Smith *(Consol Plaintiff)* | **William S. Lerach**<br>**Darren J. Robbins**<br>Lerach Coughlin Stoia Geller Rudman & Robbins LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>(619) 231-1058<br>(619) 231-7423 (fax)<br>e_file_sd@lerachlaw.com<br><br>Attorneys for:<br>Jonathan Cheek *(Consol Plaintiff)* |
| **Marc R. Stanley**<br>**Martin Darren Hebel Woodward**<br>Attorney at Law<br>3100 Monticello Avenue, Suite 750<br>Dallas, TX 75205<br>(214) 443-4300<br>(214) 443-0358 (fax)<br>mstanley@smi-law.com<br><br>Attorneys for:<br>Michael L. Steiner *(Consol Plaintiff)* | **Willie C. Briscoe**<br>**Joe Kendall**<br>Provost & Umphrey Law Firm, LLP<br>3232 McKinney Avenue, #700<br>Dallas, TX 75204<br>(214) 744-3000<br>(214) 744-3015 fax<br>wbriscoe@provostumphrey.com<br>jkendall@provostumphrey.com<br><br>Attorneys for: Jonathan Cheek *(Consol Plaintiff)* |

**Keith E. Eggleton** (admitted *pro hac vice*)
**Rodney G. Strickland, Jr.** (admitted *pro hac vice*)
Wilson, Sonsoni, Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
(650) 565-5100 (fax)
keggleton@wsgr.com
rstrickland@wsgr.com

Attorneys for Defendants Motive, Inc., Paul
M. Baker, Scott L. Harmon, David Sikora,
Eric L. Jones, John D. Thornton, Michael
LaVigna, Michael J. Maples, Sr., and
Thomas J. Meredith

**Clayton Basser-Wall**
**Brian D. Range**
Wilson Sonsini Goodrich & Rosati, PC
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759-7247
(512) 338-5400
(512) 338-5499 (fax)
cbasserwall@wsgr.com
brange@wsgr.com

Attorneys for Defendants Motive, Inc., Paul
M. Baker, Scott L. Harmon, David Sikora,
Eric L. Jones, John D. Thornton, Michael
LaVigna, Michael J. Maples, Sr., and
Thomas J. Meredith

**Paul R. Bessette**
**Michael J. Biles**
**Laura Leah Moriaty**
Akin, Gump, Strauss, Hauer & Feld, LLP
300 W. 6th Street, Suite 2100
Austin, TX 78701
(512) 499-6200
(512) 499-6290 (fax)
pbessette@akingump.com
mbiles@akingump.com
lmoriaty@akingump.com

Attorneys for Defendants Paul M. Baker and
R. Logan Wray

**Harold F. Degenhardt**
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
(214) 855-8000
(214) 855-8200 (fax)
hdegenhardt@fulbright.com

Attorney for Defendant Scott L. Harmon

**M. Scott Incerto**
Fulbright & Jaworski, L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701
(512) 536-5201
(512) 536-4598 (fax)
sincerto@fulbright.com

Attorney for Defendant Scott L. Harmon

I further certify that I served, by first-class mail, a copy of the foregoing to the following counsel of record who are non-CM/ECT participants:

| | |
|---|---|
| **Andrew L. Barroway**<br>**Stuart L. Berman**<br>**Gregory M. Castaldo**<br>**Sean M. Handler**<br>**Marc A. Topaz**<br>**Robin Winchester**<br>Schiffrin Barroway Topaz & Kessler, LLP<br>280 King of Prussia Rd.<br>Radnor, PA 19087<br>(610) 667-7706<br>(610) 667-7056 (fax)<br><br>Attorneys for:<br>City of Bethlehem Aggregated Pension Fund<br>*(Consol Plaintiff)*<br>Jack Dyke *(Consol Plaintiff)*<br>Kanto Elezaj *(Consol Plaintiff)*<br>Valentin Spitkovsky *(Consol Plaintiff)*<br>William Driscoll *(Consol Plaintiff)*<br>Lisa Saint-Aubin *(Consol Plaintiff)*<br>Sara Jackson *(Consol Plaintiff)*<br>John Smith *(Consol Plaintiff)* | **Anne L. Box**<br>**Spencer A. Burkholz**<br>Lerach Coughlin Stoia Geller Rudman & Robbins LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>(619) 231-1058<br>(619) 231-7423 (fax)<br><br>Attorneys for:<br>Jonathan Cheek *(Consol Plaintiff)* |
| **Laurence Rosen**<br>The Rosen Law Firm, P.A.<br>350 Fifth Avenue, Suite 5508<br>New York, NY 10118<br>(212) 686-1060<br>(212) 202-3827 (fax)<br><br>Attorney for:<br>Michael L. Steiner *(Consol Plaintiff)* | |

By:  /s/  *Katherine P. Chiarello* _____
   Katherine P. Chiarello